Spear, J.
It is urged in opposition to the appli-. cation that mandamus cannot be maintained because the action of the secretary of state involves exercise of discretion and because the proposed amendment would change substantially the original purpose of the organization.
1. Discretion of the secretary of state. We think that the discretion to be exercised by this officer does not reach to the merits of an application for articles of incorporation, although it may be exercised as to matters of form. The foundation of corporations in this state is regulated by general laws. When the proposed incorporation shows compliance with those laws it is entitled to articles of incorporation; if it fails to so comply, the application is to be refused upon that ground, and that is sufficient.
2. The real question, it will be perceived, is. whether or not the proposed amendment would work a material chang-e in the purpose of the company as originally organized.
The statute regulating amendments is section 3238a of the Revised Statutes. That section permits any corporation incorporated under the general corporation laws to “amend its articles of incorporation so as to change its corporate name, or the place where it is to be located, or where its principal business is to be transacted, so as to modify, enlarge or diminish the objects or purposes for which it is formed; or so as to add thereto anything omitted from, or which might lawfully have been provided for in such articles originally; provided, however, that nothing in this supplemen *64 tary section contained shall authorize a corporation by amendment, to increase or diminish the amount of its capital stock; nor shall any corporation, by amendment, change substantially the original purposes of its organization.”
The license contended for, it is urged, is conferred by the clause which permits the corporation to modify, enlarge or diminish the objects or purposes for which it is formed, so as to add anything omitted, or which might lawfully have been provided in the articles originally. Put more definitely, the proposition is, that it would have been originally competent for the corporation to organize as a street railway company, and that the right to furnish light and power might have been added to the main purpose, and what might have been done originally can now be done by amendment. And if this result could be thus brought about, so could the converse, and the petitioner, having been organized as a light and power company, may now add by amendment the right to operate a street railway; and such enlargement would not work any substantial change in' the original purposes.
Though the major premise be conceded, do • the conclusions follow? Full and due effect is to be given to all the words of the section. And this requires that we keep prominently in mind the words of the proviso, viz: “nor shall any corporation by amendment, change substantially the original purposes of its organization.” That is, whatever may be done by way of enlarging the original objects, or adding to them, one thing cannot be done, viz:‘ the original purpose of the organization cannot be substantially changed. In this *65 case, what is it? That purpose, as expressed, manifestly is to furnish light, heat and power. Gas, whether natural or artificial, is the source of lig'ht and heat. So, also, is electricity, and that agency possesses the further property of generating power. It would seem, therefore, not unnatural or improper to authorize a company to combine the business of furnishing natural gas for the purpose indicated with the business of manufacturing gas and electricity and furnishing those commodities for the same and a kindred purpose, to-wit: power. Light and power being generated by the same agency, common results from the same cause or causes, the two objects sought are germane. The main purpose of this company seems to have been light and heat, an incidental purpose power, i. e., power induced by electricity. The incident would follow the principal purpose. So it would seem that a company organized for the principal purpose of acquiring and operating a street railway by electricity might naturally, having obtained authority to do so, join with the incidental purpose of furnishing light and power within the location where it is authorized to operate. And no substantial reason is perceived why, if a company had been incorporated for either of the main purposes here indicated, it might not, by proper amendment, be also authorized to join the incidental purpose referred to.
But However this may be, in the case at bar a very much wider purpose is declared. The change, as shown by the title, is to add to a manufacturing company the characteristic of a traction company, a company to engage in the business of drawing, as drawing a body along a plane by motive *66 power. This proposed traction company desires authority to operate a railway; to operate not necessarily by the motive power which its old charter authorized it to manufacture--electricity — but by such other motive power as the company may select; steam for instance. A light, heat, and power manufacturing company, a private corporation, is to be amended into a railway company, a steam road perhaps. Whatever the motive power though, the new company would possess at least such right of eminent domain as is given by sections 3440, 3441 and 3442, of the Revised Statutes; it would' become a common carrier, a quasi public corporation, with authority to operate, taking Steubenville as one of the termini, over any territory in the state where it could obtain the right of way. Perhaps also by virtue of the act of May 14, 1894, (91 Ohio Laws, 237), it would become an express company. It would become such company unless the exception in that act contained were applied to it and it were held included within “the ordinary lines of transportation of merchandise and property in the state.” And one would hardly suppose that a corporation organized as was this relator, with the amendment added, could be seriously treated as belonging to “the ordinary lines of transportation.” That this process mig’ht change substantially and radically the character of the organization seems too p lain to need illustration or argument. Would it not as certainly chang'e the original purpose? Who would suspect that in these innocent words of une charter of this manufacturing company “to engage in the business of manufacturing gas, electricity, and furnishing natural gas for light, heat, power and for such and other purposes as may be used by the citizens *67 and corporations,” etc., there lurked a purpose to construct a railway and embark in the business of a common carrier of passengers, and of freight for the general public, and a carrier of express and mail matter as well? Surely no one.
In a situation, where as in this case, to justify a peremptory writ the relator’s rigfht must be clear and the dereliction manifest, and where, if the claim is found to rest upon a proposition involved in serious doubt the writ should be refused, it would seem that the duty of the court ought not to be difficult.
It is urged, however, that the plaintiff’s contention is supported by the authority given by section 3235, Revised Statutes, which provides that “corporations may be formed in the manner provided in this chapter for any purpose for which individuals may lawfully associate themselves,” etc. It will be noted that the word is “purpose,” not “purposes.” Its use implies a limitation. This limitation must have been by design. It is a most wise and reasonable one. We cannot assume that the general assembly would intentionally clothe corporations with capacity to unite all classes of business under one organization, as this would tend strongly to monopoly. Construing this section wholly by itself it will not justify the contention that a corporation organized for one purpose can be changed by amendment into a company having authority to pursue a number of differing and unrelated purposes. Indeed the only rational deduction is the exact opposite. But the section does not stand alone. Following, under the same title, there are provisions for the incorporation of no less than fifteen different kinds of corporations, including street railway companies, and, by later *68 enactments, the formation of electric companies for conducting electricity for light and power purposes, and to contract with municipalities for lighting streets is authorized. If it had been the design of the general assembly, by section 3235, to give the unlimited power contended for, why the subsequent provisions referred to? These enactments taken together, we think, support the conclusion that a corporation, may, except where distinct provision is made, be organized for one main purpose, not for a half-dozen. Nor is this unreasonable. It would seem to be a sufficient extension of the words of any grant to corporations to hold that they may possess such incidental powers as are necessary to carry into effect the powers expressly conferred. Nor are we without authority- bearing upon the construction of section 3235. In The State v. Stock Co., 38 Ohio St., 347, it is held that this section “must be construed as not authorizing the incorporation of insurance companies, as the organization of such companies is specially provided for in chapters X and XI of the same title.”
The subject, as a whole, invites more extended discussion, but we forbear.
The holding’ of the court upoii this branch of the case is that the controlling feature, of section 3238a is the proviso which denies the right to a corporation, by amendment, to change substantially the original purposes of its organization; that the change proposed would work a substantial change in the purposes of the original organization of this company, and is not authorized by the statutes of the state.

Writ refused and petition dismissed.